

**SPIVAK**LIPTON<sub>LLP</sub>
ATTORNEYS AT LAW

1700 Broadway
New York, NY 10019
T 212.765.2100
F 212.765.8954
spivaklipton.com

September 16, 2016



**VIA ECF**
Honorable Judge J. Paul Oetken
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    Edith Robinson, et al. v. New York City Housing Authority
             Dkt # 15-CV-4543 (JPO)

Dear Judge Oetken:

      Plaintiffs respectfully submit this letter on behalf of all parties regarding the parties' proposed settlement in the above-referenced case. For the reasons set forth below, the settlement is fair and reasonable, and should be approved. A proposed Order is attached.

      All of the plaintiffs have been informed of the terms of the settlement and have been provided with an opportunity to review the settlement agreement itself. There have been no objections to the settlement. However, since this is a fairly large multi-plaintiff case, the parties request that the status conference now scheduled for 10:30 a.m. on September 23, 2016, serve as a settlement approval conference to allow any plaintiff who objects to the settlement to either appear in person at the conference to voice their objection or, in the alternative, to contact the Court, in writing, to voice their objection and to explain all reasons for the objection. Upon this Court's approval, this Settlement Agreement will take effect provided that ninety percent (90%) or more of the plaintiffs do not object to the Settlement Agreement and all plaintiffs will be bound to the terms of the Settlement Agreement.

      **I.**    **Claims Asserted in this Case**

      This is an action brought under the Fair Labor Standards Act (FLSA) to recover unpaid overtime compensation on behalf of 218 current and former employees of the New York City Housing Authority (NYCHA) employed as Community Coordinator, Community Associate, and/or Community Assistant. The complaint was filed on June 11, 2015 and alleged various overtime pay violations under the FLSA such as allegations of unpaid pre-shift, post-shift and meal period work, late payment of overtime, miscalculation of the rate at which FLSA overtime was paid by failing to include all shift differentials in the calculation of the rate at which overtime was paid and miscalculation and payment of overtime at the straight time rate of pay when compensatory time was


**SPIVAK LIPTON** LLP
ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 2

paid out instead of payment of compensatory time at the rate of one and one-half hours for overtime hours worked in excess of 40 hours a week.

Prior to the filing of the complaint, plaintiffs' counsel met with multiple groups of plaintiffs from the different plaintiffs' work locations to learn about the plaintiffs' work practices and how they were paid, and if plaintiffs at different work locations were similarly situated. Plaintiffs filed the complaint and thereafter entered discussions with counsel for defendant for approval of notice and preliminary approval of a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA. On October 19, 2015, the parties reached such an agreement and filed a stipulation with the Court providing for notice to NYCHA employees who occupied the positions covered by the lawsuit. (Dkt. #40, October 19, 2015). Notice was then sent to all current and former employees who worked for defendant in the relevant positions during the preceding three years.

After the notice period for joining the lawsuit ended the parties engaged in discovery regarding the plaintiffs' claims and began discussions to determine whether the plaintiffs' claims could be resolved amicably. Based on the parties' agreed method of proceeding, defendant provided plaintiffs' counsel with payroll data and punch in/punch out times from defendant's timekeeping system (KRONOS). Plaintiffs' expert witness then analyzed this computerized data pursuant to the instructions of plaintiffs' counsel and he prepared an internal report for plaintiffs' counsel. Plaintiffs' counsel shared the expert's calculations with defendant's counsel. These calculations formed the basis for the negotiations that subsequently occurred between defendant's counsel and plaintiffs' counsel that led to the settlement of the case.

During the period in which the negotiations occurred, plaintiffs designated a settlement team of plaintiffs with whom plaintiffs' counsel consulted. All of the plaintiffs approved of the settlement team. Plaintiffs' counsel held several settlement team meetings with the settlement team.

The parties agreed on the settlement amounts for backpay, liquidated damages and attorneys' fees. The parties signed the enclosed settlement agreement on September 14, 2016. The plaintiffs have all been notified of the terms of the settlement agreement, and there have not been any objections to date.

## II.   Terms of the Proposed Settlement

The settlement agreement provides that NCYHA will pay a total of $309,346.37 in backpay, liquidated damages and incentive payments to the plaintiffs. Of this amount, $150,298.18 will be paid as backpay, an equal amount will be paid as liquidated damages, and $8,750 will be paid as incentive payments.[1] In addition, NYCHA has

---

[1] The seven plaintiffs on the settlement team are Edith Robinson, Dawn Burgess, Hope McGuire, Kevin McMikle, Deborah Scott, Lakisha Smith, and David Soto.


ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 3

agreed to pay statutory attorneys' fees and expenses, in the amount of $88,873.76 to the law firm of Woodley & McGillivary LLP and $56,780 to the law firm of Spivak Lipton LLP.

The settlement funds are divided among the plaintiffs as follows. For each week that a plaintiff worked in one of the eligible positions during the relevant recovery period, the plaintiff received one point. The eligible positions are Community Coordinator, Community Associate, and/or Community Assistant at NYCHA. The relevant recovery period is calculated for each plaintiff by going back 3 years from the date that a plaintiff's consent-to-sue form was filed in court up to June 23, 2016. Then the points were divided into the total amount of funds recovered.

Each of the plaintiffs has been informed of the amount of points that has been calculated for them using the defendant's payroll data. In addition, each plaintiff has been informed of the amount that they will receive (backpay, liquidated damages and incentive payments, if any) and the amounts that all of the other plaintiffs will receive under the settlement agreement. This information is posted on a confidential website to which only the plaintiffs have access.

Paragraph 2.5 of the settlement agreement provides that the defendant will pay plaintiffs' statutory reasonable attorneys' fees and expenses. Plaintiffs' counsel is handling this matter on a thirty percent (30%) contingent fee. However, the payment of the statutory fees and costs will result in the plaintiffs not paying any contingent fee whatsoever and they will not have to pay any of the costs of the litigation.

### III.   Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). This letter addresses the factors for approving FLSA settlements, including those identified in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 232 (S.D.N.Y. 2012). District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

(1) the plaintiffs' range of possible recovery;

SPIVAKLIPTONLLP
ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 4

> (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
> (3) the seriousness of the litigation risks faced by the parties;
> (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
> (5) the possibility of fraud or collusion.

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted). Factors weighing against approval include "the presence of other employees situated similarly to claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry of in a workplace." *Id.*

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See, e.g., Sanz v. Johnny Utah* 51 LLC, 2015 U.S. Dist. LEXIS 51683 (S.D.N.Y. April 15, 2015)(JMF) *Diaz v. Scores Holding Co., Inc.*, No. 07-CV-8718 (THK), 2011 U.S. Dist. LEXIS 112187, 2011 WL 6399468, at *3-4 (S.D.N.Y. July 11, 2011). Before awarding a service payment (also known as a service or enhancement payment), "a court must ensure that the named plaintiffs, as fiduciaries to the class, have not been tempted to receive high service awards in exchange for accepting suboptimal settlements for absent class members." *Ayers v. SGS Control Servs., Inc.*, No. 03-CV-9078 (RMB), 2008 U.S. Dist. LEXIS 69307, 2008 WL 4185813, at *6 (S.D.N.Y. Sept. 9, 2008).

### IV.  Application of the FLSA Factors to the Proposed Settlement

As discussed below, the parties believe that the proposed settlement terms in this case are fair and reasonable to the plaintiffs and to the defendant. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding the plaintiffs' pre-shift unpaid overtime claims, unpaid meal period claims, late payment claims, regular rate calculation claims, and claims regarding the payment of compensatory time at straight time rather than the FLSA requirement that it be paid at one and one-half times the regular rate. In addition, the settlement represents a *bona fide* dispute regarding whether an award of liquidated damages is appropriate, and whether a two or three-year statute of limitations would apply to plaintiffs' claims. Defendant's defenses regarding the amount, if any, of uncompensated time, and that to the extent there were FLSA violations, if any, they were not willful and were in good faith, were asserted and considered in the settlement negotiations. Plaintiffs' counsel shared their expert's calculations of the damages under plaintiffs' theories and the parties used this

SPIVAK LIPTON LLP
ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 5

information to negotiate a fair settlement. This compromise was reached after arms-length negotiations between the parties over the extremely complicated and multi-faceted damages claims of the plaintiffs.

### A.     Plaintiffs' Range of Possible Recovery

Although plaintiffs believe that they have alleged sufficient facts to show a continuing and systemic violation of the provisions of the FLSA overtime pay protections, the plaintiffs were also cognizant of additional difficulties faced in this litigation. In particular, the defendant claimed that the plaintiffs did not perform work during the time before their shifts and during their meal periods. Since there were no time records regarding the alleged unpaid meal periods, the parties' negotiations hinged on counsel's own investigations of these claims. Further, the plaintiffs only were scheduled to work 35 hours a week and generally worked overtime only during certain times of the year when school was not in session such as during holidays or the summer, and without working overtime, their off-the-clock activities rarely caused them to exceed 40 hours a week, which is necessary for there to be an FLSA violation. Adding to the complications involved in estimating the potential recovery are issues concerning whether the defendant could avoid the imposition of liquidated damages and whether the plaintiffs could establish whether the defendant's actions were "willful" so as to apply a three-year statute of limitations instead of a two-year statute of limitations to plaintiffs' claims pursuant to 29 U.S.C. § 255(a). For this reason, the range of potential recovery was in flux.

As reflected in paragraph 2.6 of the agreement, the settlement will be distributed among the plaintiffs based on the number of weeks that each plaintiff has worked for the defendant in one of the eligible positions during the recovery period applicable to that plaintiff. The methodology of using weeks of employment during the relevant statute of limitations period to determine the plaintiffs' amounts is the same methodology used in other FLSA cases involving complicated off-the-clock and exemption claims. This method is routinely used in FLSA cases involving a variety of different claims wherein the risks concerning whether the plaintiffs may win are difficult to separately quantify for each claim. *See, e.g., Small v. City of New York,* 1:14-cv-3469(S.D.N.Y. May 15, 2015)(approving settlement as fair, reasonable and adequate agreement settling FLSA claims by NYPD police sergeants where amounts were based on months of eligibility going back 3 years from each plaintiff's filing date); *Mullins v. City of New York,* 1:06 cv 20238 (SAS)(approval of settlement of NYPD police sergeants' FLSA claims based on months of eligibility during FLSA recovery period based on date consent filed in court); *Aarons v. City of New York,* 1:09-cv-10138, DE 26 (S.D.N.Y June 15, 2011) (approving as fair, reasonable, and adequate an agreement settling FLSA claims brought by paramedics and emergency medical technicians where settlement amounts were calculated based on employees' months of eligibility); *Conzo v. City of New York,* 1:05-cv-705, DE 630 (S.D.N.Y. June 15, 2011) (same); *Parker v. City of New York,* 1:04-cv-04476, DE 51 (S.D.N.Y. February 1, 2007) (approving as fair, reasonable, and adequate

**SPIVAK**LIPTON<sub>LLP</sub>
ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 6

an agreement settling FLSA claims brought by New York City juvenile counselors where settlement amounts were calculated based on employees' months of eligibility); *see also Johnson v. Brennan*, 1:10-cv-4712 2011, U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) (approving as fair, reasonable, and adequate an agreement settling FLSA claims brought by restaurant workers which was calculated based on employees' weeks of eligibility during the recovery period). Accordingly, the method of distributing the settlement amounts among the plaintiffs is fair and equitable.

In the settlement in this case, the plaintiffs believe they have recovered a significant portion of their potential recovery at trial, including a portion of the liquidated damages. The ultimate amount at trial would depend on factors such as whether NYCHA won on its claim that plaintiffs are not entitled to compensation with respect to claims about uncompensated pre-shift work and that they are not entitled to compensation for work allegedly performed during meal periods, whether plaintiffs would recover 2 or 3 years as a statute of limitations, and how much time, if any, that a jury would find that the plaintiffs worked off-the-clock, including time that is not reflected on defendant's time keeping system during unpaid meal periods.

### B.   Avoiding Anticipated Burdens and Expenses

Litigating FLSA damages can be and would be a fact-intensive process demanding in-depth and costly investigation by both parties. Without this settlement, both parties would need to spend significant amounts of time, money and expense to undertake lengthy discovery involving the depositions of, at a minimum, dozens of individuals and the review of personnel files, emails, overtime request forms and related information.

### C.   Seriousness of Litigation Risks

As noted in subsection IV(A) above, there was no guarantee of success on either side. The plaintiffs' allegations detailed various continuing violations of the FLSA, but the defendants raised facts that could have led to a lengthy trial on the merits. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

### D.   Arm's-Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for both parties, armed with instructions from their clients, discussed settlement terms until a tentative settlement was reached. In particular, plaintiffs' expert witnesses analyzed detailed payroll information for each of the plaintiffs

The settlement terms were approved by NYCHA. The settlement terms were also approved by a committee of plaintiffs who reviewed NYCHA's settlement positions. In


ATTORNEYS AT LAW

The Honorable Judge J. Paul Oetken
September 16, 2016
Page 7

addition, all of the plaintiffs have been informed of the settlement terms, and they have been informed of their opportunity, if they so choose, to object to the settlement terms on an individual basis.

### E.  Possibility of Fraud or Collusion

Given the parties' arms-length negotiating, the parties believe that there was no opportunity for and no possibility of fraud or collusion. Counsel represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

With respect to the incentive/service payments, the payments were made only to the plaintiffs who participated on the settlement team and regularly conferred with plaintiffs' counsel regarding the asserted claims. The amount of the service payments is $1,250 per plaintiff, and since it is being given only to 7 plaintiffs, it totals only $8,750. The service payments are proportionally a very small amount of the total settlement. As a result, there is no risk of any breach of the settlement team's fiduciary obligations resulting from these payments. Moreover, none of the individual plaintiffs have objected to these payments.

The total settlement damages equal $309,346.37, and this figure does not include attorneys' fees and costs. The statutory attorneys' fees and costs were negotiated at arms-length and will result in the plaintiffs not having to pay any of the expenses of the litigation nor any contingent fee on their backpay and liquidated damages, although they agreed to pay a 30 percent contingent fee when they retained plaintiffs' counsel.

### F.  Attorneys' Fees and Costs

Defendant has agreed to pay statutory fees and costs in the amounts of $88,873.36 for the law firm of Woodley & McGillivary LLP and $56,780 for the law firm of Spivak Lipton LLP. Of these amount, $7,675.12 represents expenses incurred for plaintiffs' counsel Woodley & McGillivary and $479 in expenses for plaintiffs' counsel Spivak Lipton. NYCHA is reimbursing plaintiffs for their expenses and statutory FLSA attorneys' fees. The amount of the fees recovered were negotiated arms-length and represent a reduction of the lodestar amount of fees in the case that plaintiffs requested.[2]

As noted above, when plaintiffs retained plaintiffs' counsel, plaintiffs agreed to pay plaintiffs' counsel a thirty percent contingent fee on the monies recovered on their behalf. However, since the attorneys' fees to be paid to plaintiffs' counsel exceed this amount, plaintiffs are not paying any contingent fee in this case. The lodestar amount is

---

[2] These figures also do not reflect the attorney time plaintiffs' counsel have incurred negotiating the fee settlement, finalizing the settlement agreement, communicating with plaintiffs to explain the settlement terms and how the funds will be distributed, preparing this letter, and participating at the settlement approval conference.



The Honorable Judge J. Paul Oetken
September 16, 2016
Page 8

SPIVAK LIPTON LLP
ATTORNEYS AT LAW

not the entire amount that plaintiffs requested from defendant, and due to negotiations in good faith by the parties, the parties were able to reach a reasonable compromise.

### G. Factors Weighing Against Settlement

None of the *Wolinsky* factors weighing against settlement are present in this case. Consistent with their obligations in light of the Second Circuit's decisions in *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85 (2nd Cir. 2013) and *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106 (2d Cir. 2013), plaintiffs' counsel undertook a careful and thorough investigation of the plaintiffs' claims before filing the instant lawsuit.

This is the first FLSA case pursued against NYCHA, so there is no history of non-compliance with the FLSA. Accordingly, none of the factors identified in *Wolinsky* as weighing against settlement are present here.

### V. Conclusion

Accordingly, the parties respectfully submit that the settlement is fair and reasonable and should be approved by the Court. We appreciate the Court's consideration of these matters.

Respectfully submitted,

SPIVAK LIPTON LLP

*Hope Pordy/R*

Hope Pordy

cc:  Jason Zoldessy, counsel for defendants (via electronic mail)
     Gregory McGillivary, Esq.